851 F.2d 86
 28 ERC 1083, 57 USLW 2031, 18 Envtl.
L. Rep. 21,026
 SMITH LAND & IMPROVEMENT CORPORATION, Appellant in 87-5740,
v.
The CELOTEX CORPORATION.
SMITH LAND & IMPROVEMENT CORPORATION, Appellant in 87-5741,
v.
RAPID-AMERICAN CORPORATION.
 Nos. 87-5740, 87-5741.
 United States Court of Appeals,
Third Circuit.
 Argued March 9, 1988.
Decided June 30, 1988.
Rehearing In Banc Denied Aug. 1, 1988.
 
 R. Stephen Shibla (argued), Joel R. Burcat, Donna M.J. Clark, Rhoads & Sinon, Harrisburg, Pa., for Smith Land & Imp. Corp.
 Gilbert F. Casellas (argued), Judith B. Wait, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellees The Celotex Corp. and Rapid-American Corp.
 Roger J. Marzulla, Acting Asst. Atty. Gen., Robert L. Klarquist, Elizabeth Ann Peterson, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for amicus curiae U.S.
 Before WEIS, GREENBERG and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.*
 
 
 1
 This is a suit by a purchaser of land seeking contribution toward expenses incurred in the clean-up of a hazardous waste site. The defendant invoked and the district court accepted the defense of caveat emptor. A review of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-75, convinces us that caveat emptor, though it may affect the amount of an award, is not a permissible defense to liability. We also conclude that the general doctrine of corporate successor liability is appropriate in CERCLA contribution claims. Accordingly, we will vacate the judgment entered in favor of defendants and remand for further proceedings.
 
 
 2
 Plaintiff owns a tract of land in Plymouth Township, Pennsylvania, on which is deposited a large pile of manufacturing waste containing asbestos. In July 1984, the Environmental Protection Agency informed plaintiff that unless it took steps to alleviate the asbestos hazard the federal government would perform the work and then pursue reimbursement. Plaintiff proceeded to correct the condition to EPA's satisfaction, allegedly incurring costs of $218,945.44.
 
 
 3
 Before reaching a settlement with the EPA, plaintiff notified defendants of its intention to seek indemnification. Plaintiff asserts that defendants are corporate successors to the Philip Carey Company (Carey), which had created the large waste pile in the course of manufacturing asbestos products. Carey sold the land to the plaintiff's predecessor in 1963.
 
 
 4
 When defendants failed to accept responsibility for clean-up, plaintiff filed suit alleging causes of action under CERCLA and various state law theories including nuisance, unjust enrichment, and common law indemnity. Relying on Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303 (3d Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985), the district court, holding that caveat emptor applied, entered summary judgment for defendants. The plaintiff's predecessor, wrote the court, "bought the land in an open, arm's-length" transaction, without concealment. "In the eyes of the law, the plaintiff calculated or must be held to have calculated the risk of future clean-up costs into the amount it was willing to pay for the land." That Hercules was precipitated by a state agency acting under state law, from the court's standpoint, did not suffice to distinguish the case from the CERCLA claim at hand.
 
 
 5
 The court noted that the plaintiff's predecessor was a sophisticated company which had inspected the land on five occasions, known of its past use, and admitted that the pile of waste was a "negative" factor in the decision to purchase the land. Despite the plaintiff's assertion that it lacked knowledge about the hazards of asbestos, the court concluded that the "price plaintiff paid for the land reflected the possibility of environmental risks."
 
 
 6
 Plaintiff does not now challenge the rulings on the state claims, but appeals only the judgment entered on the federal claim. Plaintiff argues that CERCLA permits only limited and specific defenses and that "caveat emptor" is not among them. Defendants respond that they never owned or conducted any operation on the property and hence cannot be liable. In the alternative, defendants argue that if found responsible on a theory of successor liability, then they may assert the caveat emptor defense against this experienced purchaser.
 
 I.
 
 7
 A number of CERCLA's provisions are pertinent here. Section 9607(a) provides that:
 
 
 8
 "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 
 
 9
 (1) the owner and operator of a ... facility, [and]
 
 
 10
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ...
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 shall be liable for--
 
 
 14
 (A) all costs of ... remedial action incurred by the United States Government or a State ...
 
 
 15
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan...."
 
 
 16
 42 U.S.C. Sec. 9607(a). Subsection (b) lists available defenses as an act of God, an act of war, or an act or omission of a third party (other than employees or agents of the defendants or in certain contractual relationships with them). Id. Sec. 9607(b).
 
 
 17
 Section 9613(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable ... under section 9607(a)." Such claims "shall be governed by Federal law." In resolving contribution claims, "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Id. Furthermore, a person "who has resolved its liability to the United States ... for some or all of a response action ... in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement." Id. Sec. 9613(f)(3)(A).
 
 
 18
 In short, the current owner of a facility as well as the entity that owned the facility at the time the hazardous substance was deposited are liable under CERCLA for the expense of rectifying the condition. The statute does not list caveat emptor as a defense against initial liability. Contribution may be enforced against one who is liable under the Act, but a court may utilize equitable factors in determining the amount allocated.
 
 
 19
 Setting aside complicating factors for the moment, if defendants had deposited hazardous substances on the land after passage of CERCLA and thereafter sold the tract, then plaintiff could recover an amount deemed equitable for proper expenses in abating the hazardous situation. On this premise, we review the facts and holding in Hercules.
 
 
 20
 In that case, the state required the landowner to stop the leaching of polluting chemicals from its property in violation of the Pennsylvania Clean Streams Law, Pa.Stat.Ann. tit. 35, Sec. 691 (Purdon 1977 & 1988 Supp.). Having expended substantial sums to comply with state law, the current owner sought indemnification from the successor corporation of the entity that had deposited the offending substances.
 
 
 21
 We proceeded on the assumption that the parties to the suit acted in the capacity of vendor and vendee of land. We held that under Pennsylvania law the plaintiff had no standing to sue for public nuisance, that caveat emptor barred recovery on a private nuisance theory, and that "essentially the same policy considerations that counsel adherence to the rule of caveat emptor in this situation militate against shifting the loss to [the defendants] on an indemnity theory." Hercules, 762 F.2d at 316, 318.
 
 
 22
 The record there showed that the plaintiff had carefully inspected the land before purchase and had inquired into its past use. We found it "inconceivable that the price it offered ... did not reflect the possibility of environmental risks." Id. at 314.
 
 
 23
 "Where, as here, the rule of caveat emptor applies, allowing a vendee a cause of action for private nuisance for conditions existing on the land transferred--where there has been no fraudulent concealment--would in effect negate the market's allocations of resources and risks, and subject vendors who may have originally sold their land at appropriately discounted prices to unbargained-for liability to remote vendees."
 
 
 24
 Id. at 314-15.
 
 
 25
 The ruling in Hercules is distinguishable in several significant aspects. Defenses available under state common law are not necessarily allowed by the federal statute. As noted above, CERCLA provides explicitly that contribution claims shall be governed by federal law. The decisions we reached in Hercules sitting in diversity, therefore, cannot be transplanted to a CERCLA claim as a matter of course.
 
 
 26
 The defenses enumerated in section 9607(b) are not exclusive in suits for contribution. Other sections suggest additional defenses in a broad sense; for example, the Act limits to three years the period in which an action may be brought, 42 U.S.C.A. Sec. 9613(g) (1983 & 1988 West Supp.). A party which has resolved its liability to the government is not liable for contribution; the settlement may reduce the claim pro tanto. See id. Sec. 9613(f)(2). In addition, agreements to indemnify or hold harmless are enforceable between the parties but not against the government. See id. Sec. 9607(e). Moreover, the defenses in section 9607(b) coexist with equitable considerations that may mitigate damages. See H.R.Rep. No. 253(I), 99th Cong., 1st Sess. 1, 80 (1985), reprinted in 1986 U.S.Code Cong. & Admin.News 2835, 2862. See generally Belthoff, Private Cost Recovery Actions Under Section 107 of CERCLA, 11 Colum.J.Envtl.L. 141, 183 (1986).
 
 
 27
 Although not a defense to a government suit for clean-up costs, caveat emptor if applied between private parties arguably would not contradict the statutory text. Several considerations, however, lead us to conclude that this venerable doctrine is not in keeping with the policies underlying CERCLA. First, caveat emptor completely bars recovery by a purchaser regardless of other equities affecting the parties. That result frustrates Congress' desire to encourage clean-up by any responsible party. If fair apportionment of the expense is not assured, it is unlikely that one party will undertake remedial actions promptly when it could simply delay, awaiting a legal ruling on the contribution liability of other responsible parties.
 
 
 28
 Second, CERCLA authorizes the government to seek reimbursement of response costs from any of the responsible parties, leaving them to share the expense equitably. As the House report recognizes, choosing one defendant from among several can cause ill will between the government and the unlucky party selected. See H.R.Rep. No. 253(I), supra, at 80, reprinted in 1986 U.S.Code Cong. & Admin.News 2862.
 
 
 29
 Recognizing that case law had established a right of contribution, the House Report stated:
 
 
 30
 "This section [9607] clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances. * * * Although the only defenses to liability remain those set forth in Section [9607(b) ], courts are to resolve such claims on a case-by-case basis, taking into account relevant equitable considerations."
 
 
 31
 Id. at 2861-62.
 
 
 32
 Doctrines such as caveat emptor and "clean hands," which in some cases could bar relief regardless of the degree of culpability of the parties, do not comport with congressional objectives. In the words of one district judge, "the 'unclean hands' doctrine espoused in Mardan Corp. v. C.G.C. Music, Ltd., 600 F.Supp. 1049, 1057 (D.Ariz.1984), aff'd, 804 F.2d 1454 (9th Cir.1986), has no place in CERCLA actions." Chemical Waste Management v. Armstrong World Indus., 669 F.Supp. 1285, 1291 n. 7 (E.D.Pa.1987).[1]
 
 
 33
 CERCLA expressly conditions the amount of contribution on the application of equitable considerations. As Hercules explained, if the tract's price is reduced to allow for future environmental clean-up claims, the purchaser should not be entitled to double compensation. Nonetheless, the amount of the discount, if any, the cost of response, and other considerations may enter into the allocation of contribution by the district court in its exercise of discretion.
 
 
 34
 We conclude, therefore, that under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution but may only be considered in mitigation of amount due.
 
 II.
 
 35
 The elimination of the caveat emptor defense does not resolve all the issues on this appeal. Other factors complicate the ultimate result.
 
 
 36
 This is not a straightforward suit between vendor and vendee. As defendants point out, they never owned or operated the facility. We assume at this juncture--but absent findings do not determine--that Carey previously owned the land and produced the asbestos scrap pile which precipitated the EPA action. Through a series of transactions beginning in 1967, the interest of Carey apparently settled in the hands of defendants Celotex and Rapid-American. The parties do not dispute these facts in the current procedural posture of the case; however, plaintiff argues that defendants are responsible for Carey's derelictions on a theory of corporate successor liability.
 
 
 37
 Other corporate reorganizations during the relevant period have not been fully explored in the record. Nevertheless, the factual picture of these transformations that has emerged is clear enough to discuss the general concept of successor liability as it may apply in CERCLA actions.
 
 
 38
 Corporate successor liability is neither completely novel nor of recent vintage. Blackstone described the continuing vitality of a corporation. "[A]ll the individual members that have existed from the foundation to the present time, or that shall ever hereafter exist, are but one person in law, a person that never dies; in like manner as the river Thames is still the same river, though the parts which compose it are changing every instant." 1 W. Blackstone, Commentaries *467-69, quoted in Polius v. Clark Equip. Co., 802 F.2d 75, 77 (3d Cir.1986). Changes in ownership of a corporation's stock will not affect the rights and obligations of the company itself. The corporation survives as an entity separate and distinct from its shareholders even if all the stock is purchased by another corporation.
 
 
 39
 In general, when two corporations merge pursuant to statutory provisions, liabilities become the responsibility of the surviving company. "In case of merger of one corporation into another, where one of the corporations ceases to exist and the other corporation continues in existence, the latter corporation is liable for the debts, contracts and torts of the former, at least to the extent of the property and assets received, and this liability is often expressly imposed by statute." 15 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 7121, at 185 (rev. perm. ed. 1983).
 
 
 40
 Similarly, where a new corporation is created by consolidation, unless otherwise provided by statute, the new company assumes the debts and liabilities of the constituent companies and "is entitled to avail itself of the same defenses as were available to the old companies." See id. Sec. 7117, at 178.
 
 
 41
 When no statutory merger or consolidation occurs, but one corporation buys all of the assets of another, the successor will not be saddled with the seller's liability except under certain conditions. See Polius, 802 F.2d at 77; Hercules, 762 F.2d at 308. The record here indicates that nothing other than statutory mergers or consolidations occurred; therefore, the sale of assets or the de facto merger doctrines[2] do not appear pertinent.
 
 
 42
 It is not surprising that, as a hastily conceived and briefly debated piece of legislation, CERCLA failed to address many important issues, including corporate successor liability. The meager legislative history available indicates that Congress expected the courts to develop a federal common law to supplement the statute. See United States v. Bliss, 667 F.Supp. 1298, 1308 n. 8 (E.D.Mo.1987); United States v. Chem-Dyne Corp., 572 F.Supp. 802, 808 (S.D.Ohio 1983).
 
 
 43
 The concerns that have led to a corporation's common law liability of a corporation for the torts of its predecessor are equally applicable to the assessment of responsibility for clean-up costs under CERCLA. The Act views response liability as a remedial, rather than a punitive, measure whose primary aim is to correct the hazardous condition. Just as there is liability for ordinary torts or contractual claims, the obligation to take necessary steps to protect the public should be imposed on a successor corporation.
 
 
 44
 The costs associated with clean-up must be absorbed somewhere. Congress has emphasized funding by responsible parties, but if they cannot be ascertained or cannot pay the sums necessary, federal monies may be used.
 
 
 45
 Expenses can be borne by two sources: the entities which had a specific role in the production or continuation of the hazardous condition, or the taxpayers through federal funds. CERCLA leaves no doubt that Congress intended the burden to fall on the latter only when the responsible parties lacked the wherewithal to meet their obligations.
 
 
 46
 Congressional intent supports the conclusion that, when choosing between the taxpayers or a successor corporation, the successor should bear the cost. Benefits from use of the pollutant as well as savings resulting from the failure to use non-hazardous disposal methods inured to the original corporation, its successors, and their respective stockholders and accrued only indirectly, if at all, to the general public. We believe it in line with the thrust of the legislation to permit--if not require--successor liability under traditional concepts. See Oner II, Inc. v. E.P.A., 597 F.2d 184 (9th Cir.1979).
 
 
 47
 As recounted above, because the district court in this case held that the caveat emptor doctrine precluded the plaintiff's recovery, it had no occasion to consider the question of successor liability. Consequently, the record contains no factual findings or rulings on the legal effect of the various statutes which might affect the liability passed on through merger or consolidation.
 
 
 48
 In resolving the successor liability issues here, the district court must consider national uniformity; otherwise, CERCLA aims may be evaded easily by a responsible party's choice to arrange a merger or consolidation under the laws of particular states which unduly restrict successor liability. Cf. United States v. Northeastern Pharmaceutical & Chem. Co., 810 F.2d 726 (8th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). The general doctrine of successor liability in operation in most states should guide the court's decision rather than the excessively narrow statutes which might apply in only a few states.
 
 
 49
 To summarize, our study of CERCLA persuades us that Congress intended to impose successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party as defined in the Act. We will remand to the district court for further proceedings to fully explore that issue in light of the circumstances.
 
 III.
 
 50
 The parties have not briefed nor raised the question of retroactivity as it pertains to the liability of a party for actions which occurred before enactment of CERCLA in 1980, or before passage of the amendments establishing contribution in 1986. Consequently, we do not rule on that issue but commend it to the district court for review and resolution. See Northeastern Pharmaceutical & Chem. Co., 810 F.2d at 732; United States v. Rohm & Haas Co., 669 F.Supp. 672, 676-77 (D.N.J.1987); Mayor of Boonton v. Drew Chemical Corp., 621 F.Supp. 663, 668 (D.N.J.1985); United States v. Tyson, 25 Env.Rep.Cas. (BNA) 1897, 1908-09 (E.D.Pa.1986); United States v. Price, 523 F.Supp. 1055, 1071-72 (D.N.J.1981), aff'd, 688 F.2d 204 (3d Cir.1982). For commentary and a collection of related cases see Blaymore, Retroactive Application of Superfund: Can Old Dogs Be Taught New Tricks?, 12 B.C.Envtl.Aff.L.Rev. 1 (1985); Freeman, Inappropriate and Unconstitutional Retroactive Application of Superfund Liability, 42 Bus.Law. 215 (1986); Developments, Toxic Waste Litigation, 99 Harv.L.Rev. 1458, 1539, 1555 (1986).
 
 
 51
 The judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.
 
 
 
 *
 At the time of oral argument on this case, the Honorable Joseph F. Weis, Jr., was an active circuit judge. Since that time, Judge Weis has assumed senior status
 
 
 [1]
 The duty of inspection implicit in caveat emptor has not been ignored in CERCLA. Congress, however, approached that obligation from a different perspective and imposed stringent limitations. The Act relieves a landowner from initial liability on proof that after "all appropriate inquiry ... consistent with good commercial or customary practice" the owner had no reason to know of the presence of a hazardous substance. 42 U.S.C. Sec. 9601(35)(B). Nothing in the statute, however, proscribes contribution from a previous owner that has been unable to establish the defense or is otherwise found liable
 
 
 [2]
 For commentary on this aspect of successor liability, see Barnard, EPA's Policy of Corporate Successor Liability Under CERCLA, 6 Stan.Envtl.L.J. 78 (1986-87); Note, Successor Corporate Liability for Improper Disposal of Hazardous Waste, 7 W.New Eng.L.Rev. 909 (1985). The EPA in a 1984 memorandum of its counsel has taken the position that a successor corporation is liable for the acts of its predecessor under a "continuity of business operation approach." EPA Memorandum, "Liability of Corporate Shareholders and Successor Corporations for Abandoned Sites under CERCLA," Courtney M. Price, Assistant Admin. for Enforcement and Compliance Monitoring (June 13, 1984)