**The ANSPEC COMPANY, INC. and Hugh Montgomery, Plaintiffs–Appellants,**

v.

**JOHNSON CONTROLS, INC., Hoover Universal, Inc., Hoover Group, Inc. and Ultraspherics, Inc., Defendants–Appellees.**

No. 89–2393.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1990.

Decided Jan. 4, 1991.

Ann F. Goodman, Louis B. Reinwasser, Miller, Canfield, Paddock & Stone, Lansing, Mich., Allyn D. Kantor (argued), Miller, Canfield, Paddock & Stone, Ann Arbor, Mich., for plaintiffs-appellants.

Jeffrey O. Cerar, Washington, D.C., Mary K. Kator, Clark, Klein & Beaumont, Detroit, Mich., Paul E. Gutermann (argued), Squire, Sanders & Dempsey, Washington, D.C., for defendants-appellees.

Ellen J. Durkee (argued), U.S. Dept. of Justice, Washington, D.C., for amicus curiae U.S.

Before KENNEDY and GUY, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The question in this case is whether a successor corporation resulting from a merger with a corporation that had released hazardous waste materials on a previously owned site can be held liable for cleanup costs incurred by the present owner of the polluted property under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* (1988) (CERCLA). The district court found that CERCLA creates no such liability, and granted the successor corporations' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6). *Anspec Co. v. Johnson Controls, Inc.*, 734 F.Supp. 793 (E.D.Mich.1989). In an unpublished order, the district court also dismissed the predecessor corporation, which caused the soil and groundwater pollution that the plaintiffs were required to clean up, on the theory that this corporation no longer existed. We reverse.

I.

CERCLA was intended to provide for the cleanup of hazardous waste sites and spills. We described the purpose and operation of CERCLA in *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1500 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990):

CERCLA, 42 U.S.C. § 9601, *et. seq.*, was enacted in December 1980 "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." H.R.Rep. No. 1016(I), 96th Cong., 2d Sess. 22, *reprinted in* 1980 U.S. CODE CONG. & ADMIN. NEWS 6119, 6125. In *Walls v. Waste Resources Corp.*, 823 F.2d 977 (6th Cir. 1987), we noted that CERCLA was intended "'primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible

for hazardous wastes.' " *Id.* at 981 (citation omitted). CERCLA was reauthorized and amended in 1986 by SARA, [Superfund Amendments and Reauthorization Act of 1986] Pub.L. 99–499, 100 Stat. 1613 (1986). CERCLA, when originally enacted, established the Hazardous Substance Response Trust Fund, 42 U.S.C. § 9631, to be utilized in connection with the cleanup of releases of hazardous substances into the environment. Section 9631 was repealed by SARA provisions establishing the Hazardous Substance Superfund (Superfund), 26 U.S.C. § 9507. Among other things, the Superfund finances the government's response to actual or threatened releases of hazardous materials. The Superfund's funding sources include general revenue appropriations, certain environmental taxes, monies recovered under CERCLA on behalf of the Superfund, and CERCLA-authorized penalties and punitive damages. Section 9604(a) of CERCLA authorizes the President of the United States to respond with "remedial" or other "removal" action against any threatened or actual release of any hazardous substance that may pose an imminent and substantial public health threat. Essentially, Congress has authorized the government to utilize Superfund money to take direct response actions that are consistent with the NCP and to recover *all* response costs from all persons responsible for the release of a hazardous substance. 42 U.S.C. § 9607(a). (footnotes omitted).

The Superfund provides money for cleanup costs of sites that have been abandoned and in cases where a responsible party cannot be identified or if private resources are inadequate. When responsible parties are identified, however, they are liable for cleanup costs. The categories of liable parties and the costs for which they are liable are listed in section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

In its definition section CERCLA defines "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity...." 42 U.S.C. § 9601(21). The plaintiffs, Anspec and Montgomery, are respectively the operator and the owner of a "facility"—here the previous site of a manufacturing business—where hazardous substances have contaminated the soil and groundwater. They paid for an investigation and the

cleanup of the site when notified by a state agency that soil and groundwater at the premises were contaminated. The plaintiffs then brought this action in the district court to recover these costs, alleging that the defendants, as prior owners of the facility, "discharged hazardous substances into the soil and groundwater which caused the environmental contamination at the site." They also sought recovery from the defendants for "any other necessary costs of response incurred by any other person...." 42 U.S.C. § 9607(a)(2)(B). The plaintiff sued under CERCLA and asserted three pendent claims under state law.

After concluding that the complaint failed to state a claim for relief under CERCLA, the district court also dismissed the pendent state law claims.

## II.

■ Following dismissal pursuant to Rule 12(b)(6) for failure to state a claim, we accept as true the factual allegations of the complaint. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Thus we state the facts as pled in the complaint.

### A.

Anspec purchased a parcel of land with improvements in Washtenaw County, Michigan from the defendant Ultraspherics in 1978. Anspec later sold the property to the plaintiff Montgomery, and now leases it from him. Ultraspherics went through a series of mergers after the sale of the property to Anspec, culminating on December 31, 1987, when Ultraspherics merged into Hoover Group, which was designated as the surviving corporation. As the surviving corporation, Hoover Group assumed all assets and liabilities of Ultraspherics. Johnson Controls is the sole shareholder of Hoover Group, and of Hoover Universal, which was the sole shareholder of Ultraspherics as the result of an earlier merger.

Prior to the sale of the property to Anspec, Ultraspherics buried an underground storage tank on the site "into which was disposed hazardous sludge and liquids from the grinding process of metal and plastic balls and degreaser ..." used by Ultraspherics in its business of manufacturing metal and plastic precision balls. After the underground tank was filled to capacity, two above-ground storage tanks were placed on the property and filled with the same hazardous substances. Ultraspherics' disposal of hazardous sludge and liquids caused these materials "to be routinely released into the soil and groundwater" at the site. Ultraspherics further contaminated the soil and groundwater through leaks and spills of toxic cleaning solvents used at the site.

After the Michigan Department of Natural Resources notified Anspec that it had found contamination in the groundwater beneath the site, Anspec caused tests to be made of the underground storage tank and surrounding soil. These tests included analysis of groundwater samples from four observation wells. The firm that conducted these tests identified a number of hazardous substances in three of the observation wells downgrade from the underground storage tank.

Anspec then caused the storage tank to be removed and its contents disposed of at a licensed disposal facility. The soil directly beneath the tank was then tested and water samples from the same location were tested. Analysis of these soil and water samples again revealed the presence of hazardous substances. In addition to paying for the tests and removal of the tank and disposal of its contents, the plaintiff must bear the expense of "cleaning the environment of the pollution deposited there by the Defendants." The plaintiffs notified Ultraspherics that they were required to clean up the site and requested Ultraspherics to pay the costs associated with the cleanup. When Ultraspherics refused this request, the plaintiffs filed the present action.

### B.

Hoover Group, Hoover Universal and Johnson Controls filed a motion to dismiss, and Ultraspherics filed an answer denying

the operative allegations of the complaint and pleading affirmative defenses. Ultraspherics filed and served interrogatories and requests for the production of documents, but no discovery actually took place.

The district court filed a memorandum opinion in which it found that following the December 31, 1987, merger, Hoover Group became the surviving corporation and assumed all the assets and liabilities of Ultraspherics. Nevertheless, the district court found that none of the three moving parties had ever owned, occupied or stored chemicals on the property. The court then examined 42 U.S.C. § 9607(a) and concluded that Congress had provided a list of parties potentially liable for cleanup costs of a hazardous waste site and that corporate successors were not included in any of the categories. Inasmuch as these three defendants had neither owned the property nor operated any facility there involving the disposal of hazardous substances, they did not fit any of the descriptions of persons potentially liable for cleanup costs.

The district court found no ambiguity in the cleanup liability provision of CERCLA and concluded in light of the specificity of § 9607(a) that Congress did not intend for the courts to formulate a body of federal common law respecting persons who would be liable for cleanup costs. In reaching this conclusion the court rejected the reasoning of *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989), and several district court decisions holding corporate successors liable under CERCLA for cleanup costs. The district court then entered judgment dismissing all claims against Hoover Group, Hoover Universal and Johnson Controls.

The plaintiffs filed a motion for reconsideration, which the district court denied. In its order denying reconsideration, the district court also dismissed all claims against Ultraspherics and entered a final appealable judgment. In dismissing Ultraspherics the court stated that Ultraspherics had "lost its corporate entity [sic, identity?]" through a series of mergers in which Hoo-

ver Group became the surviving corporation, assuming all assets and liabilities of Ultraspherics, and that "[a]s a result, Ultraspherics no longer existed."

### III.

On appeal the plaintiffs make two principal arguments: (1) the Third Circuit in *Smith Land*, now joined by the Ninth Circuit in *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260 (9th Cir.1990), correctly held that successor corporations are liable under CERCLA by applying settled common law principles; and (2) successor corporations are liable under CERCLA by application of accepted rules of statutory construction. The United States, appearing as amicus curiae, supports these arguments and points to other provisions of the United States Code that include successors within the definition of corporations.

The defendants, joined by two amici, assert that the district court followed commands of the Supreme Court in declining to formulate federal common law where the statute is unambiguous and there is no uniquely federal interest at stake. In this dispute between private parties, CERCLA is concerned only that the persons listed in § 9607(a) be responsible for cleanup costs. Since successor corporations are not so listed, the defendants argue, the district court correctly dismissed Hoover Group, Hoover Universal and Johnson Controls.

With respect to Ultraspherics, the plaintiffs contend that this defendant comes within the clear statutory designation of a person potentially liable; that § 9607(a)(2) makes liable for cleanup costs "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of[.]" The complaint alleges that Ultraspherics was both owner and operator of the facility at the time the disposal took place. Moreover, Michigan Compiled Laws (M.C.L.) § 450.1722 (repealed 1989 and recodified as M.C.L. § 450.1724), provides that although the separate existence of every corporation except the surviving corporation in a merger ceases, the

surviving corporation has all liabilities of every corporation that was a party to the merger. For purposes of liability, the surviving corporation and the merged corporation are one and the same. If Ultraspherics is not liable for cleanup costs, it is only because Hoover Group stands in its shoes as the surviving party that became liable for its obligations. If Ultraspherics had ceased to exist by way of dissolution rather than merger, it would have continued to function after dissolution and could "be sued in its corporate name ... in the same manner as if dissolution had not occurred." M.C.L. § 450.1834(e) (1990). Thus, the fact the Ultraspherics ceased to exist following the merger with Hoover Group is not determinative of the issue of liability for its obligations.

The defendants respond that the district court correctly dismissed Ultraspherics since it no longer exists and that the Superfund is designed for cases where the responsible party cannot be found or is out of existence.

## IV.

We reach the same result as the Third Circuit in *Smith Land* (CERCLA makes a successor corporation liable where there has been a formal merger) and as the Ninth Circuit in *Louisiana–Pacific* (the statute would make a successor corporation liable where all the conditions of a de facto merger are present). We reach this determination from our construction of § 9607(a) in its context within CERCLA, however, and find that it is not necessary to fashion a federal common law rule. Rather, construing the statute in light of a universally accepted principle of private corporation law, we conclude that Congress included successor corporations within the description of entities that are potentially liable under CERCLA for cleanup costs. That is to say, when Congress wrote "corporation" in CERCLA it intended to include a successor corporation.

## A.

The Supreme Court has stated that "the authority to construe a statute is funda-mentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt." *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981). As Justice Stevens wrote in *Northwest Airlines*, "Broadly worded constitutional and statutory provisions necessarily have been given concrete meaning and application by a process of case-by-case judicial decisions in the common-law tradition." *Id.* at 95, 101 S.Ct. at 1582.

Of course, the line separating statutory interpretation and judicial lawmaking is not always clear and sharp. If a statute is found to be abundantly clear and well defined, a judicial decision that expands or contracts its reach or adds or deletes remedies fashions federal common law. On the other hand, if the court detects only gaps in definitions or descriptions, it may fill these interstices of the statute by exercising its authority to interpret or construe the statute. As the Supreme Court has stated, these two exercises of judicial authority are fundamentally different, and they are subject to different standards. The authority to construe a statute lies at the very heart of judicial power and is not subject to rigorous scrutiny. The rule is otherwise with respect to outright judicial lawmaking, however. Before a federal court may fashion a body of federal common law, it must find either (1) that Congress painted with a broad brush and left it to the courts to "flesh out" the statute by fashioning a body of substantive federal law, or (2) that a federal rule of decision is necessary to protect uniquely federal interests. *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); Wright, Miller & Cooper, supra, at 236.

The district court referred to these restrictions on a federal court's power to fashion common law in granting the defendants' motion to dismiss. We believe the district court misperceived the judicial function invoked by the plaintiffs' claim in this case. Rather than deciding whether

the case came within its limited authority to create federal law, the court should have determined whether § 9607(a), when properly construed includes a claim against a successor corporation in a merger situation.

### B.

In discussing the difference between interpreting a statute and fashioning federal common law, the Supreme Court stated in *Northwest Airlines*, "In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions." 451 U.S. at 97, 101 S.Ct. at 1583. We agree with the district court that § 9607(a) is not ambiguous. However, it may be considered textually incomplete in the sense that it fails to spell out in so many words the universally accepted rule that a reference to liability of corporations includes successors—a rule that we conclude Congress intended to apply to the definition it used.

At oral argument, counsel for the defendants agreed that so far as he knew, all jurisdictions recognize the doctrine of successor corporate liability. The universal acceptance of this rule cannot be gainsaid. Judge Weis discussed the venerable nature and present vitality of this rule in *Smith Land.*

> Corporate successor liability is neither completely novel nor of recent vintage. Blackstone described the continuing vitality of a corporation. "[A]ll the individual members that have existed from the foundation to the present time, or that shall ever hereafter exist, are but one person in law, a person that never dies; in like manner as the river Thames is still the same river, though the parts which compose it are changing every instant." 1 W. Blackstone, *Commentaries* *467–69, *quoted in Polius v. Clark Equip. Co.*, 802 F.2d 75, 77 (3d Cir.1986). Changes in ownership of a corporation's stock will not affect the rights and obligations of the company itself. The corporation survives as an entity separate and distinct from its shareholders even if all the stock is purchased by another corporation.

> In general, when two corporations merge pursuant to statutory provisions, liabilities become the responsibility of the surviving company. "In the case of merger of one corporation into another, where one of the corporations ceases to exist and the other corporation continues in existence, the latter corporation is liable for the debts, contracts and torts of the former, at least to the extent of the property and assets received, and this liability is often expressly imposed by statute." 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7121, at 185 (rev. perm. ed. 1983).

851 F.2d at 91.

We are not creating or fashioning federal common law when we adopt an interpretation of a statute that is in harmony with a universally accepted rule of law. Rather, we are merely saying that the drafters of CERCLA were not blind to the universal rule that "corporation" includes a successor corporation resulting from a merger and that the drafters intended "corporation" to be given its usual meaning.

The defendants argue that there is a presumption that Congress deliberately omitted successor corporations when it listed the entities that are potentially liable for cleanup costs and failed to include successor corporations in the list. There is a presumption that Congress deliberately omitted a remedy from a statute that contains "a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Northwest Airlines*, 451 U.S. at 97, 101 S.Ct. at 1584. This presumption mitigates against a court's undertaking to add a discrete new remedy to such a comprehensive scheme and integrated system. The presumption does not apply, however, when a court merely interprets a word used in such a statute to include one of its generally accepted components.

### C.

Our interpretation of § 9607(a) is further buttressed by reference to various defini-

tions contained in CERCLA and other provisions of the United States Code. Section 9607(a)(2) imposes liability on any "person" who owned or operated the facility at the time the contamination occurred. "Person" is specifically defined in § 9601(21) to mean, among other things, "corporation" and "association." CERCLA does not define either "corporation" or "association," and to this extent is incomplete. Nevertheless, the United States Code contains rules of construction that apply to all federal statutes unless the context indicates otherwise. 1 U.S.C. §§ 1–6. One of these rules of construction states that when the word "company" or "association" is used in reference to a corporation, it "shall be deemed to embrace the words 'successors and assigns of such company or association,' in like manner as if the last-named words, or words of similar import were expressed." 1 U.S.C. § 5 (1988). It seems clear that the listing of the various terms applied to business entities within the meaning of "person" in § 9601(21)—"firm, corporation, association, partnership, consortium, joint venture, commercial entity ..."—was intended to include all known forms of business and commercial enterprises. Congress would have failed to carry out its purpose of reaching all such entities if successor corporations were exempted from liability.

### D.

Construing CERCLA to include successor liability is also consistent with the legislative purposes of the act. Though CERCLA's legislative history is scant, its two essential purposes have been identified. First, Congress intended to provide the federal government with the tools immediately necessary for a swift and effective response to hazardous waste sites. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986) (quoting *United States v. Reilly Tar & Chem. Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982). Second, Congress intended that those responsible for disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions they created. *Id.;* H.R. No. 96–1016(II), 96th Cong., 2d Sess. 17 (1980), *reprinted in,* 1980 U.S.Code Cong. & Admin.News 6119, 6119–6120. The creation of a private right of action against responsible parties reflects this second purpose.

Having identified the essential purposes of the Act, the First and Second Circuits have joined in proclaiming that "[w]e will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of specific congressional intent otherwise." *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1045 (2d Cir.1985) (refusing to interpret 9607(a)(1) narrowly to require current site owners to have owned the site at the time of dumping before imposing liability); *Dedham Water Co.*, 805 F.2d at 1081. Moreover, the remedial nature of CERCLA's scheme requires the courts to interpret its provisions broadly to avoid frustrating the legislative purposes. *Dedham Water Co.*, 805 F.2d at 1081.

### CONCLUSION

The district court erred in granting the three moving defendants' motion to dismiss for failure to state a claim upon which relief could be granted. The allegations of the complaint are sufficient to state a claim against Hoover Group as the successor to Ultraspherics. The exact relationship of Johnson Controls and Hoover Universal to Ultraspherics is not clear. If they are parent corporations rather than successors, there are legal issues not presented in this appeal which the district court must address after the exact relationship of these two corporations to Ultraspherics is determined on the basis of evidence not yet produced.

The dismissal of Ultraspherics on the ground that it no longer exists is somewhat anomalous in light of the record. Ultraspherics appeared without raising an issue as to its existence. It was the most active of the four defendants, filing an answer and initiating discovery while the others rested solely on their motion to dismiss. The complaint alleges that Ultraspherics was the actual polluter—the person who

owned and operated the facility at the time of disposal of the hazardous substances. If Ultraspherics is to be dismissed, it is only because its corporate successor or successors stand in its shoes as the person or persons described in § 9607(a)(2).

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion. The district court will follow Michigan law in its application of successor liability and, if the further development of the record requires it, of corporate parent liability.

KENNEDY, Circuit Judge, concurring.

I concur in the majority's holding that Michigan law of corporations should apply including its law on mergers and successor liability. I write separately to more fully express why I believe state law should be applied.

In selecting the appropriate law to govern the meaning of "corporation" as used in 42 U.S.C. § 9601(21),[1] as in all questions of statutory construction, I am guided by the language of the statute and any clear legislative intent. Neither the language nor the legislative history of CERCLA provides a basis for concluding that the creation of a uniform federal common law rule of successorship liability was intended. I would decline to create a uniform federal rule here for reasons that follow.

Although federal law ultimately controls the issue of CERCLA liability, "[c]ontroversies ... governed by federal law, do not inevitably require resort to uniform federal rules. [citations omitted] ... Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)).[2] I believe that the existence and status of a "corporation" allegedly liable under section 9607 should be determined by reference to the law under which the "corporation" was created. All the corporations involved here are creatures of state law and such questions should be determined by reference to the law of the state of their incorporation, unless the application of that law would conflict with federal policy.[3]

Convenience and common sense also point to the adoption of state corporation law as the federal law to be applied in this case, for the purpose of determining whether any of the defendants are liable as a "corporation" under CERCLA. All are artificial creations, wholly dependent on

1. The District Court's error was in finding that CERCLA was unambiguous on the issue of successor liability which led to that court's failure to undertake a federal common law analysis. However, CERCLA is *silent* rather than unambiguous on the issue of the meaning of "corporation" generally and successor liability specifically. That silence necessitates this Court's development of a rule of decision.

2. As explained by one commentator:
The federal "command" to incorporate state law may be a judicial rather than a legislative command; that is, it may be determined as a matter of choice of law, even in the absence of statutory command or implication, that, although federal law should "govern" a given question, state law furnishes an appropriate and convenient measure of the content of this federal law. P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 862 (3d ed. 1988).

3. "Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute." *Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979) (citing cases). *See United States v. Polizzi*, 500 F.2d 856, 907 (9th Cir.1974) (Duniway, J., concurring), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *cf. Melrose Distillers v. United States*, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959) (holding that state corporation law is applicable to determine whether a dissolved corporation may be indicted under the Sherman Act for pre-dissolution activities); *United States v. Michigan Carton Co.*, 552 F.2d 198, 200 (7th Cir.1977) (state corporation law applied to hold that Sherman Act charges were properly applied to surviving corporation after merger with indicted company).

state law for their existence. Those state laws define their powers, rights and liabilities, prescribe their procedures, govern their continued existence, and define the terms upon which mergers may occur and the effect to be given to mergers.[4]

Application of the framework set out by the Supreme Court in *Kimbell Foods,* 440 U.S. 715, 99 S.Ct. 1448, also supports the conclusion that state corporation law should be borrowed for the federal rule of decision on questions of what constitutes a "corporation" under CERCLA §§ 101(21) and 107(a) for liability purposes. The Court in *Kimbell Foods* held that state priority rules would be adopted as federal law to be used in settling disputes arising under certain federal loan programs. The Court advised that we should consider the following in deciding whether to adopt applicable state law or fashion uniform federal common law to construe "corporation": (1) whether there is a need for a nationally uniform body of law to apply in situations like this; (2) whether application of state corporation law would frustrate important federal policy; and (3) the impact a federal rule might have on existing relationships under state law. 440 U.S. at 728–29, 99 S.Ct. at 1458–59.[5]

First, while CERCLA is an important environmental statute, I perceive no need for a uniform federal rule to determine whether a corporation exists or can be held vicariously liable under CERCLA. I am not convinced that such issues " 'by their nature are and must be uniform in character throughout the Nation.' " *Kimbell Foods,* 440 U.S. at 728, 99 S.Ct. at 1458 (quoting *United States v. Yazell,* 382 U.S. 341, 354, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966)). It is true that the United States has some interest in this area, since in some cases it may be possible that only application of vicarious liability will allow recovery of response costs. It is also true that states may differ amongst themselves in some respects in this area. However, without a showing that state law is inadequate to achieve the federal interest, "we discern no imperative need to develop a general body of federal common law to decide cases such as this." *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 673, 99 S.Ct. 2529, 2541, 61 L.Ed.2d 153 (1979) (adopting state property law to Indian land dispute after applying *Kimbell Foods* test). As the United States [6] itself acknowledges, the law in the fifty states on corporate dissolution and successor liability is largely uniform. For example, all states agree that the surviving corporation in a statutory merger assumes the debts and liabilities of the constituent corporations. *See* 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7121 at 185 (rev. perm. ed. 1983). And all states have statutes providing for post-dissolution liability of corporations for liabilities existing prior to dissolution. *See* W. Fletcher, § 8143 at 443.

CERCLA does not purport to be a source of authority for corporate existence and corporate vicarious liability; rather the Act was intended " 'to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes.' " *Walls v. Waste Resource Corp.,* 823 F.2d 977, 980–981 (6th Cir.1987) (citation omitted). Therefore,

4. *See also Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.,* 302 U.S. 120, 127–128, 58 S.Ct. 125, 128, 82 L.Ed. 147 (1937) ("How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power.... [and] the federal government is powerless to resurrect a corporation which the state has put out of existence for all purposes....") (citations omitted).

5. Inexplicably, neither the Third Circuit in *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989), nor the Ninth Circuit in *Louisiana–Pacific Corp. v. Asarco, Inc.,* 909 F.2d 1260 (9th Cir.1990), mentioned the *Kimbell Foods* test. Both of those courts concluded, almost without analysis, that a federal common law of successor liability was required by CERCLA. *See* 851 F.2d at 92; 909 F.2d at 1263.

6. The United States filed an *amicus curiae* brief urging us to develop a uniform federal rule of successor liability.

CERCLA does not require that federal law displace state laws governing corporate existence and vicarious liability unless the state laws permit action prohibited by the Act, or unless "their application would be inconsistent with the federal policy underlying the cause of action." *Johnson v. Railway Express Agency*, 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975).[7] In applying the "consistency" test, the courts do not accept "generalized pleas for uniformity as substitutes for concrete evidence that adopting state law would adversely affect [federal interests]." *Kimbell Foods*, 440 U.S. at 730, 99 S.Ct. at 1459. Review of relevant state corporation law convinces me that its application poses "no significant threat to any identifiable federal policy or interest." *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). In incorporating state corporate law on the issue of who is a liable "corporation" under section 9607, specific state rules that are unreasonable, aberrant, or hostile to federal interests will not be applied. *Burks v. Lasker*, 441 U.S. 471, 479, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979).[8] Adequate means are thus available to insure the protection of the federal interests protected by CERCLA without creating a federal common law of corporations.

Any fears that states will engage in a "race to the bottom" in their effort to attract corporate business and enact laws that limit vicarious liability are in my opinion groundless. States have a substantial interest in protecting their citizens and state resources. Most states have their own counterparts to CERCLA and the EPA and they share a complementary interest with the United States in enforcement of laws like CERCLA that are used to remedy environmental contamination. I see no necessity to create federal common law in this area to guard against the risk that states will create safe havens for polluters.

Finally, not unlike the property law dispute in *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 99 S.Ct. 2529, wherein the Court held that the impact on existing relationships under state law was important in applying the *Kimbell Foods* test, this is an area where the states have a substantial interest in having their own law resolve these issues. Private parties have relied on state corporation law when making corporate acquisitions and in forming and dissolving corporations. The prices paid by the buyers to the sellers in those transactions undoubtedly reflected, in part, the parties' understanding concerning who retained the seller's liabilities. In addition to the "disrupt[ion of] commercial relationships predicated on state law," *Kimbell Foods*, 440 U.S. at 729, 99 S.Ct. at 1459, the creation of federal common law in this area will create uncertainty in future commercial transactions. State corporate law, evolved over decades and frequently codified in state statutes, is well developed and easily discovered and applied. By contrast, at least in the near term, there is no estab-

---

**7.** I agree with the United States' contention that the "legislative history of CERCLA indicated that Congress intended and empowered the federal courts to enunciate the substantive law to govern [certain] liability issues not explicitly resolved by Congress." Here we must provide meaning to "corporations" who may be liable. But this does not mean that we must create a federal common law of corporations to provide rules of decision. Congress did not manifest an intent to deprive courts of their power to incorporate state law. Senator Randolph, the Chairman of the Committee on Environment and Public Works, explained that "[i]t is intended that issues of liability not resolved by this act, if any, shall be governed by traditional and evolving principles of common law. An example is joint and several liability. Any reference to these terms has been deleted, and the liability of joint tort feasors will be determined under common or previous statutory law." 126 Cong.Rec. 30,932 (1980). This plainly was a reference to pre-existing state rules of decision.

**8.** In this respect, I would reserve the question whether CERCLA preempts certain state corporation law. *See, e.g., United States v. Sharon Steel Corp.*, 681 F.Supp. 1492, 1498 (D.Utah 1987) (holding that CERCLA preempts state corporation dissolution law); Note, *Corporate Life After Death: CERCLA Preemption of State Corporation Dissolution Law*, 88 Mich.L.Rev. 131 (1989). *Contra Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 817 F.2d 1448, 1451 (9th Cir.1987).

lished body of federal common law on the issues presented in this case. Borrowing state law will also avoid arriving at one answer for CERCLA corporate liability and possibly different results for all other liabilities.

This Court recently rejected a request that we develop a uniform federal common law rule and we adopted state law as the federal rule of decision in construing the term "property" in the federal civil and criminal forfeiture statutes. *United States v. Certain Real Property at 2525 Leroy Lane*, 910 F.2d 343 (6th Cir.1990). The United States urged this Court to develop a federal common law of property to be applied in the forfeiture context. The government claimed that uniform rules were necessary to effectuate the goals and purposes of the federal forfeiture scheme. This Court rejected that argument and held that state property law was to be adopted as the federal rule of decision, reasoning that "property rights ... have traditionally been measured in terms of state law," *id.* at 349, and that "the incorporation of state law as the federal rule of decision will not hinder the administration of" the federal forfeiture program. *Id.* at 347 (citing *Kimbell Foods*). Just as forfeiture proceedings implicate property rights which have traditionally been measured in terms of state law, so too do the questions of corporate successor and parent liability enter into the realm of traditional state law. Additionally, because consideration of the factors set out in *Kimbell Foods* leads me to conclude that no federal common law of corporate liability is necessary, it is appropriate to refer to state corporation law in determining corporate successor liability under CERCLA § 107.

I would also note that, in enacting CERCLA Congress deliberately left room for the operation of state law, thus acknowledging that nationwide uniformity was not required on all liability issues. For example, in section 107(e), Congress expressly preserved the efficacy of private indemnification agreements and thereby preserved the associated body of state law under which such agreements are interpreted. *See Mardan v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986). Similarly, section 113(f)(1) of CERCLA provides that claims for contribution shall be brought "in accordance with the Federal Rules of Civil Procedure." Those rules, in turn, provide that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed.R. Civ.P. 17(b).