**SYLVESTER BROTHERS DEVELOPMENT COMPANY, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD, Metal–Matic, Inc., et al., Defendants and Third–Party Plaintiffs,**

v.

**ABBOTT NORTHWESTERN HOSPITAL, Moorhead Machinery & Boiler Company, et al., Third–Party Defendants and Third–Party Plaintiffs,**

v.

**Curtis V. O'CONNOR, et al., Third–Party Defendants.**

**Civ. No. 4–88–692.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 5, 1991.

See also 772 F.Supp. 443.

Sarah Halvorson, Lindquist & Vennum, Minneapolis, Minn., for defendant and third-party plaintiff Whittaker Corp.

Scott Ammarell, McDermott, Will & Emery, Chicago, Ill., for defendant and third-party plaintiff FMC Corp.

Karna Berg, and Douglas Skor, Briggs & Morgan, St. Paul, Minn., for third-party defendant Pako Corp.

Gary Maynard Hansen, Dawn Louise Gagne, Doherty Rumble & Butler, St. Paul, Minn., for plaintiff.

John Bernard Van De North, Jr., Briggs & Morgan, St. Paul, Minn., Gary Charles

Reiter, Mahoney Dougherty & Mahoney, Stuart T. Williams, David Bradley Olsen, Henson & Efron, David Fulton Herr, John Hugh Gilmore, Maslon Edelman Borman & Brand, Robert L. Collins, Delmar R. Ehrich, Faegre & Benson, Minneapolis, Minn., Charlene W. Hatcher, Sp. Asst. Atty. Gen., St. Paul, Minn., Sarah D. Halvorson, Timothy H. Butler, Lindquist & Vennum, Minneapolis, Minn., Joe A. Walters, O'Connor & Hannan, Minneapolis, Minn., David S. Finch, Harvey M. Sheldon, Scott W. Ammarell, McDermott Will & Emery, Chicago, Ill., Becky A. Comstock, Dorsey & Whitney, Mark F. Ten Eyck, Larry Dale Espel, Popham Haik Schnobrich & Kaufman, George Orlyn Ludcke, Best & Flanagan, Virgil Cyril Herrick, Herrick & Newman, Glenn Joel Olander–Quamme, Soo Line R. Co., Susan Mary Swift, Frank Allen Dvorak, MacKall Crounse & Moore, George R. Serdar, Parsinen Bowman & Levy, Richard H. Krochock, Robert Bryan Jaskowiak, Rider Bennett Egan & Arundel, Minneapolis, Minn., for defendants and third party plaintiffs.

Gregory Alan Fontaine, Becky A. Comstock, Benjamin A. Brown, Jr., Dorsey & Whitney, Leo G. Stern, Richard D. Snyder, Fredrikson & Byron, Richard H. Krochock, Robert Bryan Jaskowiak, Rider Bennett Egan & Arundel, Erik T. Salveson, Gray Plant Mooty Mooty & Bennett, William Christopher Penwell, Gerald S. Duffy, Kathleen Ann Connelly, Siegel Brill Greupner & Duffy, Daniel Weldon Hergott, Richard M. Dahl, Dunkley Bennett & Christensen, Eric A. Nerness, Joseph Francis Lulic, Hanson & Lulic, Mark F. Ten Eyck, Larry Dale Espel, Popham Haik Schnobrich & Kaufman, Minneapolis, Minn., John L. Greenthal, Nixon Hargrave Devans & Doyle, Albany, N.Y., Andrew C. Rose, Nixon Hargrave Devans & Doyle, Rochester, N.Y., William W. Thompson, Schmidt Thompson Thompson, Johnson & Moody, Willmar, Minn., Sarah D. Halvorson, Lindquist & Vennum, Minneapolis, Minn., Gary Maynard Hansen, Dawn Louise Gagne, Doherty Rumble & Butler, St. Paul, Minn., James Thomas Martin, Gislason Martin & Varpness, Edina, Minn., Peter Matthew Banovetz, Gilmore Aafedt Forde Anderson &

Gray, Minneapolis, Minn., Robert Edward Cattanach, Oppenheimer Wolff & Donnelly, St. Paul, Minn., John Charles Goodnow, Susan Kay Wiens, Oppenheimer Wolff & Donnelly, Karl K. Vanzo, Maclay R. Hyde, Edwin Ralph Holmes, Gray Plant Mooty Mooty & Bennett, Mark Scholle, Mark R. Geier, Phillips Gross & Aaron, John F. Angell, Stich Angell Kreidler & Muth, Minneapolis, Minn., Clifford D. Bobholz, David T. Coriden, Menards Inc., Corporate Legal Staff, Eau Claire, Wis., David L. Kraker, Kraker Law Office, Minneapolis, Minn., Charles Nathan Nauen, Margaret H. Chutich, Opperman Heins & Paquin, Joseph G. Beaton, Jr., Beaton Law Office, Keith J. Broady, Minneapolis, Minn., John Bernard Van De North, Jr., Briggs & Morgan, St. Paul, Minn., Mary Jo Madigan, U.S. Atty. Office, Minneapolis, Minn., Martin F. McDermott, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., Kevin L. Call, Major, Environmental Law Div., Washington, D.C., Douglas Richard Rainbow, Mark E. Mulhollam, Gray Plant Mooty Mooty & Bennett, Susan Mary Swift, Frank Allen Dvorak, MacKall Crounse & Moore, Andrea M. Fike, Faegre & Benson, Stuart T. Williams, David Bradley Olsen, Henson & Efron, Thomas J. Williams, Miller & Williams, Greer Edwin Lockhart, Michael A. Klutho, Bassford Heckt Lockhart, Truesdell & Briggs, Byron E. Starns, Jr., Carolyn Veehoff Wolski, Leonard Street & Deinard, William A. Blonigan, Korba & Blonigan, Minneapolis, Minn., for third-party defendants.

Donovan Douglas Larson, Larson Law Office, Mark F. Ten Eyck, Larry Dale Espel, Minneapolis, Minn., for movants.

Robert L. Collins, Delmar R. Ehrich, Faegre & Benson, Minneapolis, Minn., Charlene W. Hatcher, Sp. Asst. Atty. Gen., St. Paul, Minn., David Fulton Herr, John Hugh Gilmore, Maslon Edelman Borman & Brand, Sarah D. Halvorson, Timothy H. Butler, Lindquist & Vennum, Daniel Weldon Hergott, Richard M. Dahl, Dunkley Bennett & Christensen, David L. Kraker, Kraker Law Office, Minneapolis, Minn., for third-party plaintiffs.

Vic's Auto Body Inc., pro se.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This action was commenced by Sylvester Brothers Development Company against numerous defendants, alleging liability under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–75, and the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. §§ 115B.01–.37. Many defendants impleaded third-party defendants. Defendant Whittaker Corporation (Whittaker) impleaded Pako Corporation (Pako) as a third-party defendant, seeking contribution or indemnity under CERCLA, MERLA, and the common law.[1] Jurisdiction is alleged pursuant to 28 U.S.C. § 1331 and pendent jurisdiction. Now before the court is Pako's motion for summary judgment dismissing it from this action. Whittaker and FMC Corporation (FMC) are the only parties opposing this motion.

### I.

The facts relevant to this motion are undisputed. This case involves issues related to the cleanup of the East Bethel Landfill (the site) located in Anoka County, Minnesota. The Sylvester Brothers Development Corporation (SBDC) has owned the land and operated the site. On April 28, 1987, SBDC entered into a consent order with the Minnesota Pollution Control Agency (MPCA) to clean up the site and to reimburse the MPCA for any costs it incurs related to the cleanup. Subsequently, SBDC brought this private cost-recovery action under CERCLA and MERLA to recover its costs incurred in cleanup of the site. SBDC sued numerous defendants, many of whom impleaded third-party de-

---

1. United States Magistrate Judge Franklin L. Noel entered a case management order on December 7, 1989, under which every party is deemed to have served all available claims for contribution and indemnity against every other party.

fendants. There are now over 100 parties in this action.

While the MPCA was investigating the site, Pako filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The timeline of events was as follows. In October 1984, the site was placed on the permanent list of MERLA priorities. In June 1986, the site was placed on the CERCLA national priorities list. On March 9, 1987, Pako filed its Chapter 11 petition. In its petition, Pako listed the MPCA Roseville Office as an unsecured creditor in the amount of $875. On March 11, 1987, the *Minneapolis Star and Tribune* ran a story about Pako's bankruptcy petition on the front page of its Marketplace section. By letter dated April 18, 1987, the MPCA, in its St. Paul office, was notified by SBDC that Pako had been identified as a potentially responsible party at the site. The United States Environmental Protection Agency (EPA) was notified by Pako by letter dated May 11, 1987 that it was being listed as an additional creditor in Pako's bankruptcy petition. Neither notice to the MPCA nor to the EPA provided any information concerning Pako's potential liability for cleanup at the site—at the time Pako was unaware of any possible link it had to the site.

After the MPCA received notice from SBDC as to potentially responsible parties, the MPCA sent Pako a request for information dated July 21, 1987. This request stated: "The MPCA staff has reason to believe that Pako Corporation is a 'Responsible Party' and may have information which relates to the release from the landfill." Berg Aff., Exh. G. This was the first Pako became aware of its possible link to the site. It was not received by Pako until after the confirmation of its plan of reorganization in bankruptcy, however, which was entered by order of the bankruptcy court on July 22, 1987.

Neither the MPCA nor the EPA filed a claim in the bankruptcy proceeding. The order of July 22, 1987, provides that: "Except as otherwise provided in the Plan, the debtor is discharged from all debts dischargeable under 11 U.S.C. § 1141(d), and such discharge voids any judgment and operates as an injunction to the extent provided in 11 U.S.C. § 524(a)."

## II.

■ Pako argues that it should be dismissed as a result of the discharge of its debts in bankruptcy reorganization. Pako argues that because the MPCA had actual knowledge of its role as a creditor in Pako's bankruptcy proceedings but failed to file a claim, any claim by the MPCA against Pako related to pre-confirmation liabilities of Pako for the site has been discharged. Pako contends that with no underlying debt to the MPCA, no contribution claim based on this debt can be brought against it. Minnesota law requires common liability as the basis for contribution, and no party could have common liability with Pako to the MPCA if Pako's debt to it had been discharged. Finally, Pako argues that the "fresh start" intended under the Bankruptcy Code supports its dismissal from this case and that with over 100 other parties still potentially responsible for the cleanup, its dismissal would not force taxpayers to bear any of the cleanup costs.

FMC responds that Pako's liability to third parties for contribution or indemnity is not contingent on Pako's liability to the MPCA. A prior enforcement action by a governmental agency is not necessary to establish contribution rights under CERCLA. FMC argues that even if a valid governmental claim is a prerequisite to contribution, the EPA has claims against Pako (which Pako does not claim were discharged in bankruptcy) on which contribution claims may rest. FMC also argues that there was an insufficient connection between Pako, the site, and the MPCA prior to and during Pako's bankruptcy proceedings to hold that MPCA's claims for clean-up of the site were discharged in bankruptcy.

Whittaker joins in the arguments presented by FMC. In addition, it argues that there was no claim of the MPCA against Pako with respect to the site that could have been discharged in bankruptcy

since the vast majority of the cleanup response costs (necessary to establish such a claim) had not yet been incurred. Whittaker contends that even if a CERCLA claim against Pako did arise pre-petition, Pako can still be liable for the release of hazardous substances at the site which has continued after reorganization. According to Whittaker, Pako can be liable for contribution under CERCLA as a potentially responsible party even if the MPCA's claim against Pako was discharged. Finally, Whittaker contends that Pako is liable for contribution under the common law regardless of its liability under CERCLA.

Pako replies that the MPCA had a valid contingent claim against Pako during its bankruptcy proceedings even without the expenditure of response costs because the MPCA had notice that it was a creditor during those proceedings. Pako contends that even if there are continuing releases of hazardous substances at the site post-confirmation, the definition of a contingent claim in bankruptcy is meant to include (and thus discharge) such liabilities. Pako argues that it gave the MPCA sufficient notice of its potential claim since Pako was unaware of its nexus with the site and since the Bankruptcy Code does not require parties to impart actual knowledge of the specifics of a claim, but only notice identifying creditors. It is the creditors who are bound to inquire as to the extent of any claims they have and to object to a discharge that would endanger their interests. Pako contends that under common law contribution rules, the only basis for contribution would be common liability to the MPCA, quite apart from whether the MPCA has brought a MERLA action against it or whether it might be a potentially responsible party under CERCLA. Pako also contends that there is no basis for contribution in potential EPA claims against Pako because the EPA has deferred entirely to the MPCA with respect to the site and has taken no action resulting in any obligation on the part of SBDC or any other party to clean up the site.

### III.

■ On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, however, the non-moving party must show through specific evidence that there are material facts in dispute creating a genuine issue for trial; it may not rest only upon the allegations or denials of its pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Because the relevant facts are undisputed here, this matter is ripe for determination by summary judgment.

This motion presents a situation quite similar to that faced by the court in *United States v. Union Scrap Iron & Metal*, 123 B.R. 831 (D.Minn.1990). In that case, this court held that in the absence of any disclosure by the debtor of its potential CERCLA liability during long-since concluded bankruptcy proceedings, and in the absence of any knowledge on the part of the EPA of the debtor's potential CERCLA liability, the CERCLA liability was not discharged by bankruptcy. Here Pako pushes at this rule—the MPCA had notice during bankruptcy that it was a creditor, but the notice did not refer to the CERCLA liability, nor could it, because Pako did not yet know about that liability. Yet without Pako's initiative, the MPCA was notified by SBDC that Pako was a potentially responsible party during the period of the bankruptcy proceedings, but the MPCA did not inform Pako of this until after the reorganization plan was confirmed.

■ The question in this case is whether the outcome should be different than in *Union Scrap* because a governmental agency here had: (1) notice that it was a creditor in the bankruptcy proceedings, although it did not have notice of the claim allegedly discharged, and (2) notice that the debtor was a potentially responsible party, but not in time to take any action with regard to the debtor before the completion of bankruptcy proceedings and discharge. In *Union Scrap* the court reserved the question of what would result if the debtor

had made a more complete disclosure of its liabilities, including the CERCLA claim, during its bankruptcy proceedings, or if the EPA had had actual knowledge of the debtor's involvement in the site. Pako argues that it did make disclosure and that the governmental agency, here the MPCA, did have knowledge. These are distinctions which do not make a difference, however. Pako disclosed only an unrelated liability since the potential liability here was as yet unknown to it. And the knowledge acquired by the MPCA came too late in the fast-paced bankruptcy proceedings reasonably to permit it to file a claim. The policies upheld in *Union Scrap* compel the same conclusion here. When the debtor has not disclosed its potential CERCLA/MERLA liabilities in long-since closed bankruptcy proceedings, and the governmental agency has not had actual knowledge of the potential claim in sufficient time to file a claim in those proceedings, the potential CERCLA/MERLA liability is not discharged.[2]

This conclusion is in accord with common law contribution principles, *see Johnson v. Serra*, 521 F.2d 1289, 1297 (8th Cir.1975) (applying Minnesota law). It relies on an underlying common liability from Pako, Whittaker, FMC, and others to the MPCA before they could be sued for contribution.

Pako should also remain in this case under the CERCLA contribution provision, apart from common law contribution principles. The CERCLA contribution provision states that a person may seek contribution from any potentially responsible party and that such claims shall be governed by federal law. 42 U.S.C. § 9613(f)(1); *see also Colorado v. Asarco, Inc.*, 608 F.Supp. 1484 (D.Colo.1985) (federal, not state, common law of contribution applied to earlier version of CERCLA); H.R. No. 253, 99th Cong., 1st Sess., pt. 1, at 80, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862 ("contribution claims will be resolved pursuant to

Federal common law"). This provision does not expressly require common liability to a governmental agency, as would be the case under common law contribution. Indeed, the provision states that a contribution action may be brought even in the absence of a civil action initiated by the government. *Id.* Thus CERCLA may be interpreted as providing a right to contribution separate from state common law principles of contribution. Under this reading of CERCLA, since Pako does not dispute that it is a potentially responsible party, it may be brought into SBDC's contribution action quite apart from any action, inaction, claim, or discharge of claim on the part of the MPCA.

This result supports the general purposes of CERCLA and MERLA. Among the purposes of CERCLA are the prompt cleanup of hazardous waste sites, the protection of health and the environment, and making those who pollute pay for the cleanup of that pollution. *See* S.Rep. No. 848, 96th Cong.2d Sess., at 56, 62, *cited in* S. Cooke, *The Law of Hazardous Waste*, §§ 12.03[4][b]–[d]. If common liability flowing to the MPCA among potentially responsible parties were required, then these purposes could be thwarted. Cleanups would be delayed because parties would be reluctant to undertake private cleanups without assurance that the costs of removing waste that they did not contribute to the site would be recoverable in actions for contribution. *See* H.R. No. 253, 99th Cong., 1st Sess., pt. 1, at 80, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862. Such delays would mean that the public and the environment would be exposed to hazardous substances for greater periods of time, contravening the purpose of CERCLA to protect health and the environment. Releasing potentially responsible parties from contribution actions would defeat the congressional intent that those responsible for pollution pay for its cleanup. In addition,

---

**2.** For a statement of these policies, *see Union Scrap, supra,* 123 B.R. at 837–38. The situation here is unlike *In re Jensen,* 127 B.R. 27 (9th Cir.BAP 1991), and *In re Chateaugay Corp.,* 944 F.2d 997 (2d Cir.1991), which arose in the context of ongoing bankruptcy proceedings where

the governmental agency could still file a claim. In the present case, where Pako seeks to discharge claims based on bankruptcy proceedings which ended four years ago, there is no such opportunity to file a claim and the policy analysis is quite different.

where a party has some assurance that it will incur only the costs of cleaning up that waste which it deposited on a site, it will be more likely to enter a settlement with the governmental agency, as SBDC did here. This would mean that cleanups would occur more frequently without costly litigation in order to get them under way. *See id.* For all these reasons, the federal common law of CERCLA contribution, in accord with general CERCLA goals, supports keeping Pako in this case.

The court is aware that these CERCLA goals conflict with the goal of the Bankruptcy Code to provide debtors with a fresh start. Under the circumstances presented here, however, where the bankruptcy proceedings are already complete and there was not adequate opportunity to include the debtor's potential CERLCA/MERLA liability in those proceedings, the problems posed for CERCLA enforcement by dismissing the debtor outweigh the debtor's hope for discharge. *See generally, United States v. Union Scrap Iron & Metal, supra*, 123 B.R. at 835–38. Pako's motion should be denied.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that the motion by Pako Corporation for summary judgment is denied.