Anthony MESITI, Plaintiff,

v.

MICRODOT, INC., Defendant,
Third Party Plaintiff,

v.

BOSTON & MAINE CORPORATION,
Third Party Defendant.

Civ. No. 89–321–M.

United States District Court,
D. New Hampshire.

June 28, 1993.

See also 739 F.Supp. 57.

District Court be forwarded to the district court for adjudication.

Cynthia L. Fallon, Manchester, NH, for plaintiff.

John C. Berghoff, Chicago, IL, Irvin D. Gordon, Concord, NH, for third-party plaintiff.

Jamie N. Hage, Manchester, NH, for third-party defendant.

### MEMORANDUM ORDER

McAULIFFE, District Judge.

Upon reassignment of this case all pending motions were scheduled for oral argument. Given third party defendant Boston & Maine Corporation's ("B & M") status as a reorganized company under § 77 of the Bankruptcy Act of 1898, and the injunctive and jurisdictional retention provisions of the Reorganization Court's 1983 Consummation Order, this Court questioned its own jurisdiction over the third party complaint. Accordingly, the parties were directed to address this Court's jurisdiction, in addition to the other pending motions. Argument was heard on May 10, 1993, and, at a pretrial conference held on June 2, 1993, the Court orally communicated to counsel its decision to sever and transfer the third party action for want of jurisdiction. This memorandum order confirms that decision.

As explained below, exclusive jurisdiction over claims like those brought against B & M by Microdot, Inc. ("Microdot") rests with the United States District Court for the District of Massachusetts (the "Reorganization Court"). Because Microdot has not first obtained the Reorganization Court's permission to bring suit against B & M, this Court is without jurisdiction to consider it.

*Factual Background*

This case began in 1989 when Anthony Mesiti sued Microdot for recovery of costs incurred in cleaning up environmental contaminants found on his property at 149 Emerald Street in Keene, New Hampshire. Mesiti alleged that the contaminants were dumped by Microdot and Central Screw Co., during their prior ownership. Central Screw bought the Emerald Street property from Keene National Bank in 1947. It manufactured metal screws and fasteners at the site until 1975, when Microdot bought all of Central Screw's assets. Microdot continued the screw manufacturing operation until 1983, when it sold the property to Theodore W. Weichers. In 1984 Weichers sold the property to plaintiff Mesiti.

B & M was formed as a Delaware corporation in 1963 to consolidate the interstate activities of the then Boston & Maine Railroad ("B & M Railroad"). The B & M Railroad once owned the Emerald Street property, but sold it in 1944 to the Keene National Bank. From at least the mid–1800s until 1944 the Railroad operated a repair, construction and maintenance facility, known as a "roundhouse," on the property. On March 12, 1970, the B & M Corporation filed for bankruptcy protection. Third party defendant B & M is the reorganized company that emerged from the bankruptcy proceedings held under Section 77 of the Bankruptcy Act of 1898, 11 U.S.C. § 205 (1976) (repealed 1978), before Judge Murray in the District of Massachusetts. *See In re Boston & Maine Corpo-*

*ration,* No. 70–250–M (D.Mass. June 17, 1983).

Sometime after Microdot learned of Mesiti's environmental claims, it apparently reviewed the Elm Street property's chain of title in search of jointly liable companions. It found the B & M Railroad and its successors. Perhaps surmising that one hundred years of locomotive repair and maintenance activities might well account for at least some of the Emerald Street contaminants, Microdot filed this third party action against the reorganized B & M Corporation, seeking contribution toward Mesiti's claims for environmental response costs under CERCLA,[1] under New Hampshire's Hazardous Waste Cleanup Fund statute,[2] and under "other theories of equitable apportionment of liability."

Much earlier, on June 17, 1983, the Reorganization Court entered its Consummation Order, reorganizing the debtor B & M Corporation. Section 8.01 of that Order is a sweeping injunction:

> 8.01 *Injunction. All persons,* firms, governmental entities and corporations, wherever situated, located or domiciled, *are hereby permanently restrained and enjoined from instituting,* prosecuting or pursuing, or attempting to institute, prosecute or pursue, *any suits* or proceedings, at law or in equity or otherwise, *against the ... Reorganized Company* or its or their successors or assigns *... directly or indirectly, on account of or based upon any right, claim or interest of any kind or nature whatsoever which any such person,* firm, governmental entity or corporation *may have in, to or against the Debtor,* the Debtor's Trustees *or any of their assets or properties, and from interfering with,* attaching, garnishing, levying upon, enforcing liens against or upon, *or in any manner whatsoever disturbing, any portion or the property, real, personal or mixed, of any kind or character, on or at any time after the Consummation Date in the possession of* the Debt-

or's Trustees or *the Reorganized Company.... (emphasis added)*

In Section 8.02 of the same Order, the Reorganization Court retained exclusive jurisdiction to determine the reach and application of its injunction:

> 8.02 *Reservation of Jurisdiction.* From and after the Consummation Date [June 17, 1983], the court hereby reserves jurisdiction, which shall be exclusive to the extent that under applicable law such jurisdiction is presently exclusive:
>
> \* \* \* \* \* \*
>
> (e) ... to construe this Order and the Amended Plan as to matters which may require interpretation or construction and which are not dealt with in this Order and to consider and act upon any matter as to which jurisdiction is reserved by this Order;
>
> (f) To consider and take appropriate action with respect to the injunctive provisions of this Order;

*Jurisdiction*

Consummation orders employing terms similar to those set out above have been analyzed in other railroad reorganization cases. *See, e.g., Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 1982–83 Trade Cas. (CCH) ¶ 65,054, 1982 WL 1914 (N.D.Ohio 1982); *Providence & W. R.R. v. Penn Cent. Corp.,* No. 88–2119–Mc, 1989 WL 73308, 1989 U.S. Dist. LEXIS 7259, 30 Env't.Rep.Cas. (BNA) 1309 (D.Mass. June 28, 1989). The consummation order construed in *Pinney Dock* is nearly identical to that issued by the Reorganization Court in this case. Senior Judge Thomas' exhaustive analysis of the *Pinney Dock* order is particularly helpful in construing the Consummation Order at issue here. It is not necessary to duplicate Judge Thomas' extensive reasoning, but is sufficient to say that this Court adopts it.

---

1. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C.A. §§ 9601–9675 (West 1983 & Supp. 1993).

2. Hazardous Waste Cleanup Fund Act, N.H.Rev. Stat.Ann. Ch. 147–B (1986).

116

*Pinney Dock* involved an antitrust claim brought against a bankrupt railroad's reorganized successor, based in part upon acts committed before the successor company came into existence. Because the claims were brought against the reorganized successor strictly in its capacity as successor (i.e. not based upon liability in its own right), the court treated those claims as claims against the debtor-predecessor, at least for purposes of determining applicability of the consummation order's injunctive provisions. *Pinney Dock*, 1982 WL 1914, at * 4. Judge Thomas concluded that the jurisdictional retention and injunctive provisions of the consummation order did apply to plaintiff's post-reorganization antitrust suit; that the Reorganization Court was empowered to enter such orders; and, because its injunctive and jurisdictional retention provisions applied to those claims, that the Reorganization Court's prior permission was a necessary jurisdictional prerequisite to plaintiff's bringing suit against the reorganized company in any other venue. *Id.* at * 19.

In the *Providence & W.R.R.* case, as here, suit seeking CERCLA reimbursement was brought against a reorganized railroad company by a subsequent purchaser of contaminated property. That complaint was also dismissed for want of prior jurisdictional consent of the Reorganization Court. There, the contaminated property was actually owned and sold by the reorganized company, but the Court, following *Pinney Dock*, nevertheless held that the plaintiff's CERCLA claims "essentially constitute[d] a suit against the debtor-predecessor," and,

accordingly, the injunctive and jurisdiction retention provisions of the consummation order were held applicable, requiring consent by the Reorganization Court before plaintiff could proceed in any other venue. *Providence & W.R.R.*, 1989 WL 73308 at *2 1989 U.S.Dist. LEXIS 7259, at *4.

In this case, the contaminated property was owned nearly fifty years ago by the B & M Railroad, B & M Corporation's predecessor. The property, having been sold in 1944, was not an asset of the debtor B & M, and so was never transferred to the Reorganized Company. The alleged acts of contamination and ownership status giving rise to Microdot's CERCLA contribution claim necessarily occurred before 1944, when the B & M Railroad operated the roundhouse facility on the site (and those claims arguably did not arise until 1980 when CERCLA was enacted).

It is plain, then, that Microdot is claiming against the Reorganized Company strictly in its capacity as successor to its debtor-predecessor, and strictly on the basis of acts by and/or cleanup obligations of that debtor-predecessor.[3] There is no independent contribution claim against the Reorganized Company arising either from its own acts, or from any statutorily imposed obligations as an owner/operator of the site, since the Reorganized Company has never been directly associated with the contaminated property in any capacity other than as reorganized successor to the debtor corporation.

■ If *Providence & W.R.R.* is distinguishable, it is on grounds that there the

**3.** CERCLA imposes liability on any "person" who owned or operated a "facility" at the time hazardous waste was disposed on it. 42 U.S.C.A. § 9607(a)(2). The term "person" includes corporations. 42 U.S.C.A. § 9601. While the statute does not indicate whether CERCLA imposes liability on successor corporations, five circuit courts of appeal and numerous district courts have held that it does. *See United States v. Mexico Feed and Seed Co.*, 980 F.2d 478, 486 (8th Cir.1992); *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir.1992); *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1245 (6th Cir.1991); *summ. judg. granted in part*, 788 F.Supp. 951 (E.D.Mich.1992); *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263 (9th Cir.1990);

*Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 91–92 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *United States v. Distler*, 741 F.Supp. 637, 640–43 (W.D.Ky.1990); *Westwood Pharmaceuticals v. Nat'l Fuel Gas Distrib.*, 737 F.Supp. 1272, 1280 (W.D.N.Y.1990); *In re Acushnet River & New Bedford Harbor*, 712 F.Supp. 1010, 1013 (D.Mass.1989). "The national interest in the uniform enforcement of CERCLA and the same interest in preventing evasion by a responsible party ... are the reasons we think the successor liability is appropriate *where factually justified.*" *Carolina Transformer*, 978 F.2d at 837 (emphasis added) (citing *Louisiana–Pacific*, 909 F.2d at 1263; *Smith Land*, 851 F.2d at 92).

court specifically found that plaintiff's "*CERCLA ... claims arose before* [the consummation date]." *Id.* (emphasis added). Here, Microdot argues that its claims against the Reorganized Company could not have arisen before the consummation date, because before that date no claim by Mesiti or anyone else for damages or recovery of response costs existed. It says it had no reason to anticipate that such claims would be made against it by a subsequent owner of the property sometime in the future. Of even more significance, Microdot argues, it was unaware of the B & M Railroad's potential link to the contamination on the property before the Consummation Order was issued by the Reorganization Court. In short, Microdot argues that because its CERCLA contribution claims against the debtor B & M were not reasonably "foreseeable" during the reorganization proceedings, they did not qualify as "claims" or even "contingent claims" within the meaning of Section 77 of the 1898 Bankruptcy Act, so they could not have been brought, were not discharged, and are indeed maintainable against the Reorganized Company.

Several courts have attempted to reconcile the competing policy objectives of CERCLA on the one hand (to promote accountability for and the speedy cleanup of hazardous waste), and the Bankruptcy Act(s) on the other (to provide reorganized debtors with a "fresh start" unburdened by prior debt obligations). The preferred means of doing so involves judicial application of a "foreseeability" test when deciding whether post-bankruptcy CERCLA claims are discharged. *See, e.g., In Re Chicago M., S.P. & P.R.R.*, 974 F.2d 775 (7th Cir.1992); *NCL Corp. v. Lone Star Bldg. Ctrs., Inc.*, 144 B.R. 170 (Bankr. S.D.Fla.1992); *In Re Nat'l Gypsum Co.*, 139 B.R. 397 (Bankr.N.D.Tex.1992); *Sylvester Bros. Dev. Co. v. Burlington Northern R.R.*, 133 B.R. 648 (Bankr.D.Minn. 1991); *See generally* Kevin J. Saville Note, *Discharging CERCLA Liability in Bankruptcy: When Does a Claim Arise?*, 76 Minn.L.Rev. 327 (1991) [hereinafter *Discharging CERCLA Liability* ] (advocating foreseeability approach to discharge of CERCLA claims in bankruptcy). *But cf. In re Jensen*, 127 B.R. 27, 32 (Bankr. 9th Cir.1991), *rev'g In re Jensen*, 114 B.R. 700 (Bankr.E.D.Cal.1990).

The Court of Appeals for the Seventh Circuit in *In re Chicago, M., S.P. & P.R.R.*, 974 F.2d 775, 777 (7th Cir.1992) "balance[d] the policies underlying the bankruptcy laws and CERCLA" in determining whether a plaintiff's post-reorganization CERCLA claim should have been filed before closure of a railroad's bankruptcy under Section 77. The Court found that before issuance of the consummation order plaintiff knew there had been a release of hazardous substances on its property; that response costs were imminent (albeit not yet incurred);[4] that the hazardous release likely fell within the purview of CERCLA; and, that the contamination resulted from a derailment of the debtor's train. *Id.* at 787. Applying a foreseeability analysis, the Court determined that "[w]ith this information at its disposal, [plaintiff] should have been able to link the contamination to [the debtor]." *Id.* Because plaintiff could have fairly contemplated a potential CERCLA

**4.** Under CERCLA, private parties may bring suit against statutorily defined responsible parties for response costs they have incurred in cleaning up hazardous substances. 42 U.S.C.A. § 9607(a)(4)(B) (Supp.1993). Any person may seek contribution from any other person who is liable or potentially liable under § 9607(a), during or following any civil action under §§ 9606 or 9607(a). 42 U.S.C.A. § 9613(f)(1) (Supp. 1993).

Even where CERCLA response costs have not actually been incurred, but those costs may or are likely to be incurred, at least a "contingent debt" or "contingent contractual liability" exists for bankruptcy purposes. 11 U.S.C. § 103(a)(8)

(1976) (repealed 1978). Thus, a person may have a contingent CERCLA contribution claim under the Bankruptcy Act, without having a ripe claim for adjudication under CERCLA. *See e.g., Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 942 (3d Cir.1985) ("a person may hold a 'contingent claim' and thereby be a 'creditor' within the meaning of the Bankruptcy Act, even though he presently has no cause of action against the debtor.... This proposition follows from the broad language of section 77(b) which provides that 'claims' include 'interests of whatever character.'"), *cert. denied*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

claim against the railroad debtor in reorganization before the bar date, the Seventh Circuit affirmed the consummation order's bar. *Id.* at 788. Of course, the Court's opinion also implies that post-reorganization CERCLA claims not reasonably foreseeable prior to a bankruptcy bar date may be brought against the reorganized company. *See also NCL Corp.*, 144 B.R. at 177–180 (claims discharged in debtor's bankruptcy because claims fairly contemplated by lessor, who had actual knowledge of site's condition, and ability to inspect property for contamination).

In fact, "unforeseeable" post-reorganization CERCLA claims have been allowed by some courts, either because CERCLA was not in effect at the time of reorganization (obviating any finding of a legal relationship between the claimant and debtor from which even a cognizable *contingent* bankruptcy claim might arise), or because under particular factual circumstances neither the debtor nor claimant could have reasonably contemplated the existence of an actual or contingent bankruptcy claim. *In re Penn Cent. Transp. Co.*, 944 F.2d 164, 167–68 (3d Cir.1991), (cleanup claims allowed where CERCLA enacted *after* consummation date) *cert. denied,* — U.S. —, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *Sylvester Bros. Dev. Co.*, 133 B.R. at 653 (when governmental agency has not had actual knowledge of the potential claim in time to file claim in bankruptcy proceeding, potential CERCLA liability not discharged). *Cf. In re Nat'l Gypsum Co.*, 139 B.R. at 412 (EPA's bar date extended to file claims for CERCLA response costs fairly within the contemplation of the parties at time of debtor's bankruptcy).

Whether Microdot's CERCLA claims in this case were foreseeable and "arose," or were at least "contingent" for purposes of Section 77, before the consummation order's bar date, will likely depend on what information Microdot actually or constructively had available to it regarding contamination at the Elm Street site; what information it had regarding the B & M Railroad's possible link to the contamination; and whether that information was reasonably available between CERCLA's enactment in 1980 and B & M's consummation date in 1983. *See In re Penn Cent. Transp. Co.*, No. 70–347, 1990 WL 117974 1990 U.S.Dist. LEXIS 10477 (E.D.Pa. August 8, 1990), *rev'd,* 944 F.2d 164, 167–68 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *Discharging CERCLA Liability, supra* at 359–360; cases cited *supra.*

But the issue here is not whether Microdot's claims actually arose, or were contingent, during B & M's reorganization proceeding, or were in fact discharged by that proceeding. Rather, the dispositive issue before this Court is simply whether Microdot's claims are of the type fairly falling within the reach of the Reorganization Court's injunction and retention of jurisdiction provisions.

This suit does fairly come within that reach. It is based upon acts and ownership obligations of the debtor completely distinct from those of the Reorganized Company, and it necessarily seeks recovery, in substantial part, from assets of the debtor now in the hands of the Reorganized Company. *See* Consummation Order, § 8.01. While it can be argued that Microdot's claims against the Railroad were not reasonably foreseeable and so were not discharged, it can also be argued, with perhaps equal plausibility, that the claims were both foreseeable and discharged. All of which emphasizes the point, however, that the Reorganization Court retained jurisdiction even "to construe [it's own Order] ... as to matters which may require interpretation or construction." Consummation Order, § 8.02(e). Whether Microdot's claims were or were not foreseeable, were or were not discharged, and thus do or do not come within the injunctive and jurisdiction retention orders of Reorganization Court are all issues that at a minimum "require interpretation or construction" of the Consummation Order in light of applicable law.

The Reorganization Court is not only in the best position to interpret and apply the terms of its own injunctive and retention of jurisdiction orders, it properly reserved exclusive authority to do so. *See In re Chi-*

*cago, M., S.P. & P.R.R.*, 974 F.2d 775, 789 ("the reorganization court was in a better position ... to interpret and apply the terms of [its] consummation order").

Accordingly, Microdot cannot litigate its CERCLA, New Hampshire statutory, or other equitable claims against the Reorganized Company in this or any other venue, without first obtaining leave to do so from the Reorganization Court. "This Court cannot exercise jurisdiction until such permission is obtained." *Providence & W.R.R.*, 1989 WL 73308 at *3 1989 U.S.Dist. LEXIS 7259, at *7.

*Transfer of Venue to the Reorganization Court*

 Rather than dismiss Microdot's third party claim against B & M for lack of jurisdiction, the Court may transfer it to the proper venue under 28 U.S.C. § 1631.[5] This provision provides, in pertinent part:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631 (West 1991). The statutory language requires the transferor court to determine whether the action could have been brought in the transferee court at the time it was filed. *U.S. v. Heller*, 957 F.2d 26, 27 (1st Cir.1992). Here, the District Court for the District of Massachusetts is a not only a Court where Microdot's action *could* have been brought under 42 U.S.C. §§ 9607(a) and 9613(b) (jurisdiction over controversies arising under CERCLA) and 28 U.S.C. § 1331 (jurisdiction over federal questions) but it is the *only* court where the action could have been brought consistently with the injunctive and jurisdictional retention provisions of the Consummation Order.

*Conclusion*

Microdot's suit for contribution against B & M is hereby ordered transferred to the Reorganization Court, the United States District Court for the District of Massachusetts. B & M's Motion to Sever Third Party Claims under Rule 42(b) (document no. 46) is granted to facilitate this transfer. The Court necessarily refrains from ruling on B & M's Motion for Summary Judgment (document no. 39) since it is without jurisdiction to do so. B & M's Motion to Dismiss Plaintiff's Third Party Claims Against Microdot, Inc. (document no. 45), and Motion to Remove Third Party Complaint from the Jury List (document no. 47) are moot.

SO ORDERED.

5. Microdot filed for bankruptcy within the past few weeks. However, this court is not precluded from transferring Microdot's suit against B & M to the United States District Court for the District of Massachusetts, nor is that court restrained from considering the merits of that action, by the automatic stay provision of the Bankruptcy Code. 11 U.S.C. § 362, though broad in scope, applies only to actions brought *against* the bankrupt debtor, not to those brought by the debtor, for the benefit of the estate. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204, 1205 (3d Cir.1991), ("Thus, within one case, actions *against* a debtor will be suspended even though closely related claims asserted *by* the debtor may continue.") (emphasis in original), *vacated, reh'g granted,* No. 90–6057 (3d Cir. Jan. 10, 1992), *and reinstated,* No. 90–6057 (3d Cir. March 24, 1992); *Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 4 (1st Cir.1983), *cert. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983).